IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CRITICAL NURSE STAFFING, INC., <br><br> Plaintiff, <br><br> v. <br><br> FOUR CORNERS HEALTH CARE CORPORATION, a Utah Corporation, and FOUR CORNERS HEALTH CARE - NM, LLC, a New Mexico Limited Liability Company, <br><br> Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS <br><br> Case No. 2:13-CV-646 TS |

This matter is before the Court on Defendants Four Corners Health Care Corporation and Four Corners Health Care, LLC's Motion to Dismiss Plaintiff's Amended Complaint.[1] For the reasons discussed more fully below, the Court will grant the Motion.

I. BACKGROUND

Plaintiff Critical Nurse Staffing is a Colorado corporation with its principal place of business in the State of Colorado. Plaintiff also does business in Utah and has several offices in Utah. Defendant Four Corners Health Care Corporation is a Utah corporation with its principal place of business in Blanding, Utah. Defendant Four Corners Health Care – NM, LLC is a New Mexico limited liability company with its principal place of business in New Mexico.

---

[1] Docket No. 17.

1

The parties are in the business of providing in-home health care workers to qualified individuals under the provisions of the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA"). The EEOICPA provides compensation and medical benefits to former employees of the federal government, as well as contractors and subcontractors who provided labor and services at certain United States Department of Energy Facilities.

Plaintiff has been approved by the United States Department of Labor, Office of Workers' Compensation to provide services under the EEOICPA. Plaintiff provides in-home care services to EEOICPA-eligible individuals in Utah, Colorado, Arizona, and New Mexico. The services Plaintiff provides include skilled nursing as well as other healthcare services.

Plaintiff alleges that during the course of employment with Plaintiff, a number of Plaintiff's employees—including Sarah Gonzales, LaDerna Hassell, and Annette Smith—entered agreements with Defendants to supply Defendants with information about the whereabouts, diagnoses, and eligibility of certain of Plaintiff's EEOICPA clients. Plaintiff alleges that Defendants sought this information so that they could induce Plaintiff's clients to switch their authorized care provider to Defendants. According to Plaintiff, Ms. Gonzales, Ms. Hassell, and Ms. Smith also actively worked to convince multiple EEOICPA beneficiaries to switch providers. Plaintiff alleges that due to these actions, Plaintiff lost EEOICPA clients.

Plaintiff further alleges that Defendants have made false statements about Plaintiff. "[S]tating such things as the Plaintiff was either going to cease doing business or that the Plaintiff's right to provide care to EEOICPA eligible patients had been or was going to be

revoked."[2] According to Plaintiff, these statements were made to clients and prospective clients of Plaintiff and caused confusion amongst Plaintiff's clients and prospective clients.

## II. STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[3] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[4] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[5] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[6]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[7] As the Court in *Iqbal* stated,

---

[2] Docket No. 10, at 7–8.

[3] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

[7] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[8]

## III. DISCUSSION

Plaintiff's Amended Complaint brings five causes of action: (1) civil conspiracy, (2) intentional interference with contract, (3) tortious interference with contract, (4) common law fraud, and (5) violations of § 1125 of the Lanham Act. Defendants move this Court to dismiss Plaintiff's claims for failure to effect timely service under Federal Rule of Civil Procedure 4(m) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

A.   RULE 4(m)

Federal Rule of Civil Procedure 4(m) provides the time limitation for service of process. Defendants focus on the first part of the rule, which provides, "If a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant . . . ." Defendants focus on the mandatory "must" included in this statement to support the proposition that this case must be dismissed as untimely. Defendants' argument, however, fails to take into account the remaining language of Rule 4(m). The same provision provides in the alternative that the Court may "order that service be made within a

---

[8] *Iqbal*, 556 U.S. at 679 (citations and internal quotation marks omitted).

specified time."⁹  And, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."¹⁰

Here, it is undisputed that Plaintiff failed to serve its original complaint within 120 days. For this reason, the Court issued its Order to Show Cause granting Plaintiff fourteen days within which to inform the Court of the status of the case and Plaintiff's intentions to proceed.¹¹ Plaintiff responded to the Court's Order and requested additional time to serve process and to file an amended complaint.  The Court granted Plaintiff's request and Plaintiff filed its Amended Complaint on January 13, 2014.  Plaintiff then timely served the Amended Complaint on Defendants.

Based on the foregoing, the Court finds that Plaintiff has demonstrated good cause for its failure to serve its original complaint within 120 days and that Plaintiff properly effected service within the time allotted by the Court.  Accordingly, the Court will deny Defendants' Motion to Dismiss on timeliness grounds.

B.     RULE 12(b)(6)

The Court will address the parties' arguments as to the sufficiency of each of Plaintiff's claims individually.  This matter arises under the Court's diversity jurisdiction, therefore, where appropriate, the Court will apply the substantive law of the State of Utah.¹²

---

⁹ Fed. R. Civ. P. 4(m).

¹⁰ *Id.*

¹¹ *See* Docket No. 6.

¹² *See MediaNews Grp., Inc. v. McCarthey*, 494 F.3d 1254, 1260 (10th Cir. 2007).

1. CIVIL CONSPIRACY

Defendants argue that Plaintiff has not alleged facts sufficient to maintain a claim for civil conspiracy because the facts alleged do not establish any unlawful actions taken by Defendants. Plaintiff contends that the unlawful act that is the predicate to its civil conspiracy claim is Defendants' tortious or intentional interference with contract.

To prove civil conspiracy under Utah law, "five elements must be shown: '(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof.'"[13]

As will be discussed in detail below, Plaintiff has not alleged facts sufficient to maintain a claim for tortious or intentional interference with contract. Therefore, the Court finds that Plaintiff's Amended Complaint fails to state a claim for civil conspiracy.

2. INTERFERENCE WITH CONTRACT

Plaintiff's second and third claims are titled intentional interference with contract and tortious interference with contract. Defendants argue that the claims are repetitive of one another and should be brought under a single heading. Plaintiff appears to concede the redundancy of the pleading in its response as it addresses these claims jointly.

The Supreme Court of Utah has long recognized the viability of a claim for intentional or tortious interference with the contract of another.[14] Interference with contract claims address

---

[13] *Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1290 n.17 (quoting *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987)).

[14] *See Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 301–02 (Utah 1982); *Bunnell v. Bills*, 368 P.2d 597, 602 (1962).

conduct that "intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract."[15] Interference with contract claims do not apply where "the action causing the breach was done with just cause of excuse" or "the breach was caused by the doing of an act which [defendant] had a legal right to do."[16]

Here, Plaintiff's interference-with-contract claim is premised on contracts it had with its EEOICPA clients and Plaintiff's allegation that Defendants intentionally engaged in efforts to persuade its EEOICPA clients to terminate their agreements with Plaintiff. Plaintiff's Amended Complaint, however, contains very few factual allegations to support this claim. For example, Plaintiff's claim contains the conclusory allegation that "[t]he interference by the Defendants with these relationships . . . was improper."[17] But, Plaintiff does not identify specific instances of illegal or improper conduct that support this conclusion. Further, Plaintiff has not alleged that its EEOICPA clients breached the terms of their contracts; rather, Plaintiff alleges that its clients terminated their contracts.

In short, Plaintiff's Amended Complaint contains insufficient factual allegations to maintain a claim for intentional interference with contract. The Court would also note that "the right of action for interference with a specific contract is but one instance, rather than the total class, of protections against wrongful interference with advantageous economic relations."[18] The parties reference other protections against wrongful interference in briefing Plaintiff's

---

[15] Restatement (Second) of Torts § 766 (1979).

[16] *Bunnell*, 368 P.2d at 602 (citations omitted).

[17] Docket No. 10, at 5.

[18] *Leigh Furniture*, 657 P.2d at 301.

intentional-interference-with-contract claim, but because Plaintiff does not bring a claim for wrongful interference with advantageous economic relations, the Court will not address the propriety of such a claim.

3. FRAUD

Defendants argue that Plaintiff's common law fraud claim should be dismissed because Plaintiff fails to allege facts with particularity sufficient to maintain such a claim. Defendants also argue that Plaintiff lacks standing to bring a fraud claim on behalf of its former clients. Plaintiff does not respond to Defendants' standing argument, but contends that it has pleaded facts sufficient to maintain a claim for fraud.

> Under Utah law, to bring a claim sounding in fraud, a party must allege (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.[19]

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance."[20] "[A] party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"[21] In limited circumstances, a party may be granted standing to assert the rights of another; however, the party seeking this third-party standing "bears the burden of showing that he has a close relationship

---

[19] *Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1066–67 (Utah 1996).

[20] *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004).

[21] *Id.* at 129 (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

with the person possessing the right at issue, and there is a hindrance to the possessor's ability to protect [their] own interests."[22]

In the instant case, Plaintiff seeks to recover for a fraud that was allegedly perpetrated upon Plaintiff's clients by Defendants. Plaintiff alleges that Defendants made untrue statements about the viability of Plaintiff's business to Plaintiff's clients to induce the clients to change their authorized care provider from Plaintiff to Defendants. In its opposition, Plaintiff claims that its clients relied on Defendants' false statements as the basis for terminating their agreements with Plaintiff. Thus, the allegedly fraudulent statements were made to and relied upon by Plaintiff's clients. Accordingly, Plaintiff's former clients are the proper plaintiffs with standing to bring a claim for fraud.

Even were the Court to overlook Plaintiff's lack of standing, it would be constrained to find that Plaintiff fails to state a claim for fraud. To maintain its fraud claim, Plaintiff must allege facts demonstrating that the party that was injured and suffered damage—Plaintiff—was induced to act and acted upon the false or reckless statement of Defendants. Plaintiff has not alleged any facts establishing that Defendants perpetrated a fraud against Plaintiff. For these reasons, the Court finds that Plaintiff has failed to allege facts sufficient to state a claim for fraud as a matter of law.

4. LANHAM ACT

Plaintiff's final claim is premised on § 1125 of the Lanham Act. The Lanham Act prohibits, among other things, false advertising. Section 43(a) of the Act, as amended, provides in relevant part,

---

[22] *McDonald v. Doyle*, 175 F. App'x 947, 949 (10th Cir. 2006) (unpublished) (citation and internal quotation marks omitted).

> Any person who, on or in connection with any goods or services, . . . uses in commerce . . . any . . . false or misleading representation of fact which . . . in commercial advertising or promotion misrepresents the nature, characteristics, [or] qualities . . . of . . . another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.[23]

The Tenth Circuit has instructed that a violation of the Lanham Act's prohibition on false advertising occurs when

> (1) th[e] defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.[24]

Plaintiff's Lanham Act claim is premised on its assertion that Defendants stated to Plaintiff's clients "such things as the Plaintiff was either going to cease doing business or that the Plaintiff's right to provide care to EEOICPA-eligible patients had been or was going to be revoked."[25] While such statements may be false, Plaintiff has not provided further factual enhancement sufficient to establish the plausibility of its claims.[26] Plaintiff's Amended Complaint contains no factual allegations from which the Court can determine whether the statements were made in connection with commercial advertising, in commerce, and caused confusion, or were likely to cause confusion, amongst Plaintiff's clients.

---

[23] 15 U.S.C. § 1125(a)(1)(B).

[24] *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999) (citations omitted).

[25] Docket No. 10, at 7–8.

[26] *See Iqbal*, 556 U.S. at 678.

In sum, Plaintiff's Lanham Act claim suffers from the same deficiency as the majority of its state-law claims—a lack of well-pleaded factual allegations. For this reason, the Court finds that Plaintiff's Lanham Act claim fails to state a claim for relief that is plausible on its face.

C.   LEAVE TO AMEND

In its opposition, Plaintiff requests that "should the Court believe that the Plaintiff has not met it[s] initial factual burden" it be allowed to "file a second amended complaint which includes more specific references to the facts underlying each cause of action alleged."[27] This Court is not required to recognize such a brief request made in opposition to a motion to dismiss as a motion for leave to amend.[28] "[A] request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it."[29] Nevertheless, in the interest of reaching the merits of Plaintiff's claims, the Court will dismiss Plaintiff's Amended Complaint without prejudice and allow Plaintiff fourteen days within which to file a properly supported motion for leave to file a second amended complaint.[30]

IV.  CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Docket No. 17) is GRANTED. Pursuant to the terms of this Order, Plaintiff's Amended

---

[27] Docket No. 18.

[28] *See Koyle v. Wells Fargo Bank Minn.*, 470 F. App'x 712, 713 (10th Cir. 2012) (unpublished).

[29] *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999).

[30] *See* DUCivR 15-1 ("Parties moving under FRCP 15-1 to amend a complaint must attach the proposed amended complaint as an exhibit to the motion for leave to file.").

11

Complaint is dismissed without prejudice and Plaintiff shall have fourteen (14) days within which to file a properly supported motion for leave to file a second amended complaint.

DATED this 17th day of June, 2014.

BY THE COURT:

_____
TED STEWART
United States District Judge